IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEO ALI MCGRAW,<br><br>Plaintiff,<br><br>v.<br><br>JOHN WETZEL, et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 15-5987 |

**OPINION**

**Slomsky, J.** **June 29, 2016**

## I. INTRODUCTION

In this is case, a prisoner is alleging violations of his federal rights by state officials during his incarceration and seeks damages for those violations. Plaintiff Leo Ali McGraw brings this civil action, pro se, under 42 U.S.C. § 1983 against Defendants John Wetzel, Pennsylvania Secretary of the Department of Corrections; Dennis E. Lebo, Clerk of Court of Cumberland County; and Parole Agents Kimberly Barkley, Marc Youngerman, and Patrice Schalm (the "Parole Board Defendants").[1] Plaintiff alleges he was deprived of his constitutional rights because of various incidents that occurred during his ten-year incarceration. (Doc. No. 3.) He seeks $11.25 billion in damages. (Doc. No. 3 at 11.) Before the Court are Motions to Dismiss Plaintiff's Complaint filed by all Defendants. (Doc. Nos. 11, 13, 18.) For the following reasons, the Court will grant all Defendants' Motions and dismiss Plaintiff's Complaint.

[1] The Complaint originally named as one combined Defendant the Pennsylvania Parole Board and Parole Agents. (Doc. No. 3 at 15.) On November 10, 2015, pursuant to 28 U.S.C. § 1915(e), the Court terminated this Defendant. (Doc. No. 2 at 2.) Plaintiff later substituted Defendants Barkley, Youngerman, and Schalm. (Doc. No. 8.)

## II. BACKGROUND

On December 12, 2006, Plaintiff was sentenced to "not less than 5 years nor more than 10 years" imprisonment after entering a guilty plea for attempted murder. (Doc. No. 13, Ex. A at 13.) Plaintiff was imprisoned at SCI-Graterford and SCI-Waymart. (Doc. No. 3.)

On November 4, 2015, Plaintiff commenced this action pro se against Defendants under 42 U.S.C. § 1983, alleging the following claims:

1. On March 8, 2012, an extraction team forcibly removed Plaintiff from his cell to relocate him to the restrictive housing unit ("RHU"), injuring him in the process. (Id. at 17.) Plaintiff claims that during the extraction, he was beaten in the face, punched in the head, and pepper sprayed. (Id.) No members of that extraction team are named Defendants in this case. (Id.)
2. On September 11, 2012, Plaintiff was told that he was being relocated from the RHU to the mental health unit ("MHU"). (Id. at 19.) Plaintiff further claims that while being relocated, he realized he was being taken to a psychiatric observation cell, not the MHU. (Id.) Upon this realization, Plaintiff avers he asked to be taken back to the RHU; however, an extraction team was called. (Id.) The extraction team allegedly dropped him, choked him, cut off his clothes, and injected him "with a hypodermic needle containing an unknown substance." (Id. at 20.) No members of that extraction team are named Defendants, either.
3. On November 16, 2012, prison officials mistakenly determined that Plaintiff was on cell restriction. (Id. at 21.) Plaintiff then claims that, after he attempted to ask to use the phone, an officer grabbed him by the arm and wrestled him to the ground. (Id.) This incident resulted in Plaintiff being charged with assaulting the officer and being placed in

the RHU. (Id. at 22.) Plaintiff also claims he did not receive proper notice of his RHU placement, but later learned that he was to be held there for six months. (Id.)

4. Between March 2012 and November 2012, Plaintiff received excessive time in the RHU. (Id. at 23.)

5. A serious clerical error occurred during Plaintiff's sentencing. (Id. at 24.) He claims he sought relevant court documents from Dennis E. Lebo, Clerk of Court of Cumberland County, to prove this error. (Id.) Upon receiving the requested documents, Plaintiff alleges some had been falsified. (Id.) He claims Lebo "collaborated" with the Department of Corrections ("D.O.C.") to falsify the documents. (Id.)

6. The Parole Board was negligent for not paroling him in accordance with the sentence he claims to have received. (Id. at 29.) He claims his sentence included at least six months in a halfway house and at least two years of parole. (Id.) Plaintiff makes a broad allegation that, after his "wealth situation was made public," the parole system "collaborated" with the D.O.C. to extend his sentence. (Id. at 30.) He claims this was accomplished in part by the Parole Board only seeing him three times in ten years.[2] (Id.)

7. Plaintiff was forcibly medicated by "Dr. E. Martinez," who is not a named Defendant, either. (Id. at 32.) As a result, Plaintiff formed a "mental, chemical, or physical dependency toward the badly prescribed drugs." (Id. at 33.) Plaintiff claims this is part of a larger conspiracy involving prison staff and inmates to target and control him

[2] This claim is stated only against the "PA Parole Board." (Doc. No. 3 at 27.) As noted above, on November 10, 2015, that Defendant was dismissed with prejudice by the Court and the Complaint was never amended. The Court will construe this claim as an allegation against the Parole Board Defendants, who were added to the Complaint by Court Order on December 30, 2015 but never specifically mentioned in "Claim VI."

because of his status as a "high profile offender'' and his "financial situation and wealth."[3] (Id. at 31.)

Defendant Wetzel, Defendant Lebo, and the Parole Board Defendants filed Motions to Dismiss Plaintiff's Complaint on January 8, 2016, January 11, 2016, and February 29, 2016, respectively. (Doc. Nos. 11, 13, 18.) On January 21, 2016, this case was reassigned from the Honorable L. Felipe Restrepo to this Court. On January 29, 2016, Plaintiff filed an Order in Opposition to the Defendants' Motions to Dismiss. (Doc. No. 17.) On March 18, 2016, Plaintiff filed another Motion with the Court.[4] (Doc. No. 19.) On May 3, 2016, the Court held a hearing on Defendants' Motions to Dismiss.

The Motions to Dismiss are now ripe for a decision, and for the following reasons the Court will grant them all.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609

[3] Plaintiff applied for, and was granted, in forma pauperis status in this case. (Doc. No. 2.)

[4] Plaintiff's Motion is a request for discovery. (Doc. No. 19 at 2.) During the Hearing on May 3, 2016, the Court explained to Plaintiff that he is not entitled to discovery at this stage of litigation pursuant to the Federal Rules of Civil Procedure. (Doc. No. 21 at 22-25.) Plaintiff's Motion also contained a document the Court will construe as a request for Sovereign Immunity. (Doc. No. 19 at 3.) Plaintiff is not entitled to Sovereign Immunity. Accordingly, this Motion will be denied.

F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). "A pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citations omitted).

When considering a motion to dismiss, the Court may consider certain documents not made part of the complaint. As noted in Miller v. Cadmus Communications:

> Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

Civ. A. No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. March 1, 2010) (citations omitted).

## IV. ANALYSIS

42 U.S.C. § 1983 states that any person who, acting under color of state law, deprives someone of one of their constitutional or statutory rights, may be held liable for damages. In order to successfully state a § 1983 claim, a plaintiff must show: (1) that the defendants acted under color of state law; (2) that they violated the plaintiff's federal constitutional or statutory rights; and (3) that the violation of rights caused injury. Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). All three Defendants move the Court to dismiss Plaintiff's § 1983 claims. For the following reasons, their Motions will be granted and Plaintiff's Complaint will be dismissed. The Court will address each Motion seriatum.

### A. Claims Against Defendant Wetzel Will Be Dismissed

Defendant Wetzel moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim against him. Specifically, Defendant Wetzel argues the Complaint fails to assert that he had any personal involvement in any alleged violation of Plaintiff's federal rights.

As noted above, Defendant Wetzel is the Secretary of the Pennsylvania D.O.C. He asserts that he is being sued under a supervisory theory of liability because of his status at the D.O.C. Defendant Wetzel makes this assertion on the basis that the Complaint does not specify his personal involvement in the Plaintiff's alleged deprivation of constitutional rights. For the following reasons, the Court agrees with Defendant Wetzel's position.

A supervisory theory of liability is not a proper basis for liability in this § 1983 action. The Supreme Court discussed this issue in Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).[5] In Iqbal, a detainee brought a suit against several government officials, claiming that his constitutional rights had been violated because of discriminatory practices during his pre-trial confinement. These practices had been implemented in the wake of the September 11, 2001 attacks. The Supreme Court held that:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. (citations omitted). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Id. at 676.

The detainee claimed that the government officials were liable because "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Id. at 677. The Supreme Court rejected this argument, stating, "masters do not answer for the torts of their servants . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. However, the Court differentiated a supervisor implementing certain practices with discriminatory intent from a supervisor implementing certain practices that led to discriminatory results absent discriminatory intent. Id.

[5] Iqbal involved an action brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), not § 1983, because it was an action against federal officials rather than state officials. However, the Iqbal Court recognized the same analysis applies to both Bivens actions and § 1983 claims stating: "[Bivens] is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'" 556 U.S. at 675-76 (citations omitted).

The Court acknowledges that a theory of supervisory liability has not been completely eliminated from § 1983 claims. The Third Circuit held that:

> Section 1983 provides a cause of action against "every person who," under color of state law, "subjects, or causes to be subjected," another person to a deprivation of a federally protected right. It is well-recognized that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Rather, state actors are liable only for their own unconstitutional conduct. With this principle in mind, we have previously identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. "Failure to" claims—failure to train, failure to discipline, or, as is the case here, failure to supervise—are generally considered a subcategory of policy or practice liability.

Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316-17 (3d Cir. 2014), rev'd sub nom. on other grounds, Taylor v. Barkes, 135 S. Ct. 2042 (2015) (internal citations omitted).

The Court agrees with Defendant Wetzel's assertion that the claims against him are brought under a supervisory theory of liability. Furthermore, the Court agrees that his status as a supervisor-defendant in this § 1983 suit is expressly proscribed by Iqbal and Barkes. Nowhere does the Complaint mention Defendant Wetzel's direct or indirect involvement in the alleged wrongdoing against Plaintiff. There is no mention of any individual actions of Defendant Wetzel that violated Plaintiff's statutory or constitutional rights. Specifically, the Complaint does not allege that Defendant Wetzel acted "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm" or "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct.[6] See id.

The Complaint fails to state a claim against Defendant Wetzel. Any claim in the Complaint against Defendant Wetzel would be under a theory of respondeat superior for which liability could not attach in a § 1983 suit under Barkes. Therefore, Defendant Wetzel's Motion will be granted and all claims against him will be dismissed.

**B. Claims Against the Parole Board Defendants Will Be Dismissed**

During his incarceration, Plaintiff appeared before the Parole Board three times. (Doc. No. 3 at 29.) Each time, he was denied parole. (Id.) Plaintiff alleges the Parole Board Defendants were "negligent" in not paroling him. (Id.) The Parole Board Defendants claim they are shielded from liability by absolute and qualified immunity.

Whether parole board officials are entitled to absolute or qualified immunity depends on the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1988). Parole board officials are shielded by absolute immunity when acting in an adjudicatory capacity. Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). Executive or administrative acts entitle parole board officials to qualified or good faith immunity. Id. Although parole board officials are "in reality executive officers carrying out the policy of the State," it is clear that "[n]o doubt can be entertained that probation officers and Pennsylvania Parole Board members are entitled to quasi-judicial [absolute] immunity when engaged in adjudicatory duties." Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986) (citing, Thompson v. Burke, 556 F. 2d 231, 236-238 (3d Cir. 1977)).

---

[6] At the Hearing on the Motions to Dismiss, Plaintiff conceded that Wetzel was a Defendant because of "[h]is capacity of being head of corrections." (Doc. No. 21 at 21.) Even looking beyond his Complaint, Plaintiff makes no allegations against Wetzel, as a supervisor-defendant, to which liability could attach.

In the present case, the core of Plaintiff's claims against the Parole Board Defendants derives from their refusal to grant him parole. While it is not always obvious whether the function of an actor is adjudicatory or executive, the Parole Board Defendant's refusal to grant parole is an adjudicatory function deserving of absolute immunity in the instant case. Indeed:

> [T]he Third Circuit holds that a parole board member or parole or probation officer is entitled to absolute immunity when he engages in certain adjudicatory acts such as: (1) hears evidence; (2) makes recommendations as to whether to parole a prisoner; or (3) makes decisions as to whether to grant, revoke or deny parole.

Breslin v. Brainard, No. 01-CA-7269, 2002 WL 31513425, at *7 n. 10 (E.D. Pa. Nov. 1, 2002) (citing Wilson, 878 F.2d at 776; Harper, 808 F.2d at 284).

Because the Parole Board Defendants' actions relevant to the Complaint are adjudicatory in nature, the Parole Board Defendants are entitled to the benefit of the affirmative defense of absolute immunity.

The Parole Board Defendants, in the alternative, claim they are at least entitled to qualified good faith immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages by qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The Court agrees.

The Supreme Court instructs:

> Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.

Taylor, 135 S. Ct. at 2044 (2015) (internal quotation marks omitted).

Plaintiff does not allege that the Parole Board Defendants violated his "clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow, 457 U.S. 800, at 818. Plaintiff's claims against the Parole Board Defendants arise from their denial of his parole. Refusal to grant a prisoner parole is in the discretion of the Parole Board and is not a violation of the prisoner's constitutional or statutory rights. Accordingly, the Parole Board Defendants' Motion will be granted and the claims against them will be dismissed.

**C. Claims Against Defendant Lebo Will Be Dismissed**

Defendant Lebo argues that the claims against him in the Complaint are untimely. On December 12, 2006, Plaintiff was sentenced to "not less than 5 nor more than 10 years" in prison by the Court of Common Pleas of Cumberland County after pleading guilty to attempted murder.[7] (Doc. No. 13, Ex. A. at 2, 13.) While incarcerated, Plaintiff wrote to Defendant Lebo requesting several trial documents from his 2006 sentencing hearing. When the documents arrived, Plaintiff asserts, they did not reflect a specific sentencing structure imposed by the Court of Common Pleas of Cumberland County, which Plaintiff alleges included six months in a halfway house and a minimum of two years parole. The Complaint alleges that "someone at Clerical Courts Records Dennis E. Lebo or other party altered and falsified [Plaintiff's] DC-300B form, [Plaintiff's] sentencing order, and possibly [Plaintiff's] sentencing guidelines."

[7] The Court may take judicial notice of a public record that a defendant attaches as an exhibit to a motion dismiss because of such document's undisputed authenticity. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d. 1192, 1196 (3d Cir. 1993). In the present case, Defendant Lebo attached, as an exhibit to his Motion to Dismiss, the transcript of Plaintiff's 2006 sentencing. The Court may consider this document in deciding the Motion to Dismiss.

(Doc. 3 at 24.) On November 4, 2015, Plaintiff commenced the current case against Defendant Lebo.

As an initial matter, Plaintiff's fraud claims against Defendant Lebo are meritless. Defendant Lebo attached as Exhibits to his Motion to Dismiss Plaintiff's Sentencing Proceedings Transcript and the corresponding DC-300B from his 2006 guilty plea for attempted murder.[8] (Doc. No. 13, Exs. A, B.) The Sentencing Proceedings Transcript confirms that Plaintiff was originally sentenced to "not less than 5 years nor more than 10 years". (Doc No. 13, Ex. A at 13.) Plaintiff's DC-300B indicates an identical sentence. (Doc. No. 13, Ex. B at 3.) No fraud has occurred or has been properly alleged. In any event, Plaintiff's claims against Defendant Lebo are time-barred by the statute of limitations.

Section 1983 contains no limitations period. In such instances, where a federal cause of action has no established limitation period, the Court "must look to the most 'appropriate' or 'analogous' state statute of limitations." 287 Corp. Ctr. Assocs. v. Twp. of Bridgewater, 101 F.3d 320, 323 (3d Cir. 1996) (citing Wilson v. Garcia, 471 U.S. 261, 271 (1985)). The length of the statute of limitations for cases brought under § 1983 is governed by the personal injury tort law of the state where the cause of action arose. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Here, the relevant Pennsylvania statute is 42 Pa.C.S. § 5524(7):

> Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subjection to another limitation specified in this subchapter.

42 Pa.C.S. § 5524(7) sets a two-year limitation period.

The two-year limitation period begins to run:

[8] The Court may take judicial notice of Defendant Lebo's Exhibits because they are of public record.

> "[W]hen the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted); see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988).

Kach, 589 F.3d at 634.

In the present case, Plaintiff takes issue with the recording of his actual sentence on various documents. Plaintiff should have learned of the accuracy of these documents close to the time after he was sentenced on December 12, 2006. He had access to this information while incarcerated. 42 Pa.C.S. § 9759. As noted above, the current action was commenced on November 4, 2015, well beyond the two-year limitation period imposed under 42 Pa.C.S. § 5524(7). Therefore, Plaintiff's claims against Defendant Lebo are barred by the statute of limitations. Defendant Lebo's Motion will be granted and the claims against him will be dismissed.

**D. Conspiracy Claims Will Be Dismissed**

Plaintiff, throughout his complaint, makes broad, generalized allegations of a conspiracy against Defendants and other unnamed parties. The Complaint alleges the parole system "collaborated" with the D.O.C. and the Court Records Office to deny Plaintiff parole. (Doc. No. 3 at 30.) Plaintiff claims this collaboration is a result of his "wealth situation [being] made public." (Id.) Plaintiff alleges this conspiracy is the reason he was targeted while in prison and denied parole. (Id.)

"[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010). A "conspiratorial agreement" requires the

showing of a "meeting of minds" between alleged co-conspirators, not simply parallel behavior. Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008). A complaint successfully makes a conspiracy claim if the alleged facts, taken as true, indicate such an agreement or "meeting of minds" between alleged co-conspirators. Great Western Mining & Mineral Co., 615 F. 3d at 178. "[T]he law is clear that the plaintiff must plead more than legal conclusions of a conspiracy or agreement." Mikhail v. Kahn, 991 F. Supp. 2d 596, 645 (E.D. Pa.), aff'd, 572 F. App'x 68, 72 (3d Cir. 2014).

Plaintiff pleads only speculative "legal conclusions of a conspiracy or agreement" against Defendants. Id. Such speculation does not amount to a viable conspiracy claim under the law. The Complaint includes no facts that, if taken true, could support the conclusion that there was a conspiracy against him. Plaintiff merely makes broad claims that a conspiracy took place. Plaintiff's claims do not meet the standard for sufficiently pleading a conspiracy claim.

**E. Plaintiff Will Not Be Granted Leave to Amend His Complaint**

Although Plaintiff has not requested that he be granted leave to amend his Complaint, the Court will not grant him leave to amend because doing so would be futile. "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [she] has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview Sate Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original). Granting leave to amend is futile when "the plaintiff was put on notice as to the deficiencies of [her] complaint, but chose not to resolve them." Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002). A plaintiff asserting § 1983 claims is put on notice of the deficiencies of her complaint by way of a defendant's motion to dismiss. Kundratic v. Thomas, 407 F. App'x 625, 630 (3d Cir. 2011). Finally, "a district court need not

grant leave to amend a complaint if the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

In the present action, Plaintiff was put on notice of the deficiencies of his Complaint by way of each Defendant moving to dismiss the case. Still, Plaintiff chose not to amend the Complaint. Therefore, under the law, it would be futile to grant Plaintiff leave to amend his complaint.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss (Doc. Nos. 11, 13, 18). An appropriate Order follows.